All right, our fourth case for this morning is United States v. Curtis. Mr. Brindley. May it please the court. My name is Beau Brindley and I represent the defendant appellant Eric Curtis. Mr. Curtis appeals his conviction at trial on two bases. And I would like to first today address Mr. Curtis's challenge to the obtainment and use of cell site data information that was presented against him at his trial. Now the very issue that Mr. Curtis has raised on cell site analysis is currently pending in the Supreme Court in Carpenter v. United States. Oral argument on the issue has been heard and an opinion will be forthcoming. And that opinion, whichever way it's decided, will be decisive on the issue of whether the gathering of Mr. Curtis's cell site data for more than 200 days, which was used against him at trial, constituted a search. To address that first question of whether it does, and I think the answer is going to be that it does, after reading the material and looking through what was said at the oral argument, more than 200 days of obtainment of cell site data is basically analogous to 24-7, 24 hours a day, surveillance. Let me ask you a technical question before you get too deeply into this. There were several orders issued by the, actually a couple of chief judges of the district court under the Stored Communications Act. There's the August 14, 2013 order from Chief Judge Castillo, but it doesn't, the government has said that that order didn't produce any evidence that was admitted at trial. And there's an earlier order, actually from Judge Castillo, and there's an even earlier order, if I'm not mistaken, from then Chief Judge Holderman. So are there motions to suppress relating to all of these orders? The motions to suppress related to everything, because the position taken by Mr. Curtis was that in each instance, these constituted searches that required a warrant. So that's clear? Because I was trying to see whether he objected to the April 11, 2013 order. As I read the record, Mr. Curtis' counsel, I was trial counsel, I wasn't the counsel that handled the motion, but their objection was to the use of cell site data analysis writ large. And that would have been an objection that applied to all of the orders that came out on the basis of the Stored Communications Act. So I think the objection covered everything, because they were talking specifically about the entire subject matter of cell site data gathering and analysis. Now the Carpenter case, do you think that that raises the question of any kind of good faith exception to the use of this material? Well, the good faith exception is something that was not raised in Carpenter. It's not one of the issues under consideration. It was, however, addressed very briefly by Justice Alito and Counsel for Carpenter at the end. And what Counsel for Carpenter indicated at that time was that that was a matter that would have to be taken up on remand after a determination was made on whether or not this constituted a search requiring a warrant. But it's clearly before us. The government has certainly raised it. The government has raised it. I have trouble, actually, seeing the government marching in getting all of these orders from the Chief District Judges under the SCA and seeing why we should not undergo a good faith inquiry and why it wouldn't be satisfied here. There's a couple of reasons that I think are important here. And the first is that the case the government relies on for good faith analysis when a statute is relied on that requires a warrantless search is Krull. And Krull is a case that the ruling in Krull applied to administrative statutes and administrative searches. And in Los Angeles v. Patel, the Supreme Court gave some guidance on what constitutes administrative statutes and searches. But why should we think the Supreme Court meant this so narrowly? The Court takes a read what they have to say as, you know, good for this train only. Well, what I'm saying is the Supreme Court has endorsed the idea of taking good faith into account in a number of contexts, certainly the Leon context, Krull context. I think if we don't understand that they're saying that you should allow evidence in if there's good faith because there will be no deterrent purpose function, there won't be any reason to do it is something that, as I say, I understand that as a background rule that this Court's obliged to apply. And Your Honor, the point I was trying to make is that at first Los Angeles v. Patel made clear that the thing that makes a statute administrative is that it allows for pre-compliance review and notice. I understand that, and I'm just saying that assumes that it matters that the context of Krull was administrative. Well, in Krull they talked about that, though. One of the reasons that they said it's okay and we're not going to have a situation where the legislator's passing a law and there's no real opportunity for judicial review, which is what Justice O'Connor argued in dissent, that one of the reasons for that is because we have pre-compliance review, because these people can get an injunction, the very people, the licensees that are affected by the Krull statute. The people carrying around cell phones do not have any opportunity for pre-compliance review. It's totally different. The SCA is with the cell phone providers who don't have standing to speak for those people. And so the very thing that the Krull Court said, well, it's going to be okay because we can still get judicial review over the constitutionality of these statutes, is the fact that we have pre-compliance review here. To find good faith in this instance is to expand what the Supreme Court found in Krull. And that expansion would create a situation that's very problematic and would take away basically judicial review in a lot of circumstances. Consider this. But here you are. I mean, why wouldn't it come up this way? Because in the future, what's going to happen if you find good faith in this case, then down the line, everybody's going to know, as long as they follow the checklist of procedures that you're following the statute, there's no basis for us to challenge. Not if the Supreme Court rules otherwise in Carpenter. I mean, that'll change the- But the Supreme Court's not going to rule in Carpenter. They've said they're not going to address good faith. But if they say a warrant is necessary- Yes, they will say that, I think. Then, going forward, people who don't get warrants are going to have a lot of trouble showing that they acted in good faith. Going forward, that's true. But the problem is if you expand Krull to apply to this, then Krull's also going to apply to every other non-administrative statute. And the next statute may be a different one. And what you're going to end up with is a situation where the legislature can- Say the legislature passes a statute that says we can- This is on the edge of the curtilage of your house, and do a search as long as they follow four steps. And they can do it without a warrant. And then that is a search that normally, if a court was hearing this, would say, hey, that violates the Constitution. But if Krull is expanded to cover Curtis, and anybody who's doing this looks at it and says, well, they followed the procedures, they followed the statute, this is on the edge of the curtilage. It's a question as to whether- There's no way. We're going to lose. And the pragmatic reality is nobody's going to challenge it. And you end up with a situation where the legislature is defining the constitutional protection. I'm not sure. I'm having trouble going down all the way on this parade of horribles. But let me come at it from a different point of view. The government's also argued, as we were discussing a couple of cases ago, that these are really just third-party business records. There's no Fourth Amendment interest in them anyway. See Miller. See this and that. The problem with that, and this is going to be addressed in Carpenter and was at length by Justice Gorsuch in particular and some others, the difference is in large part with Smith and Miller. In Smith and Miller, there's a voluntary transfer of the very information that's being sought. You give a check to a third party, and you know it's going to that person, and it's going through the bank. You know. And you carry your cell phone around. Nobody agrees that my whereabouts 24 hours a day are going to be plotted. Nobody agrees to that. Nobody voluntarily gives that up. You know what, sometimes, actually I'm not sure that's right. Because a lot of the time, maybe this just happens to me, but I look at my cell phone and this pop-up will come up saying, we want to use your current location. Is that okay with you? Location services are turned off or what have you. Right. And when you say no, it doesn't matter. They still do this. See, that person who says, no, I don't, then they would definitely think, well, I'm not giving anybody my, and they still are. So that's just evidence to my point. I think ultimately, the other thing, here's the other thing about the deterrence angle, which everybody talks about in the context of the good thing. But sincere belief in, that is not the only issue, because when a police officer sincerely believes, and they can sincerely believe, I've got exigent circumstances to go into Judge Kaney's house. I'm going in. And then it turns out he challenges it and the court finds, no, it's not true. But even if he's, no matter how sincere he was, it's still excluded. And so that's not the only factor. And the reality here is that if this is expanded, if Crowell's expanded, we're put in a situation where the Fourth Amendment, which I think is in peril more often than not, our ability to constitutionally challenge and have the courts decide is limited. And it is, unless the other problem with this is. But of course, you don't get a pre-execution challenge with the warrant either. They're issued ex parte. So either way, you're making a challenge after the fact. True. But there's a lot more that goes into, I have a lot more confidence in a warrant than I do in this. In reality, the other problem here is. Because you think the state judges who issue warrants are more careful than the chief judge of the district court? Because the chief judge doesn't have to, you don't have to have, the requirements of a warrant don't exist here. You don't have to have the significant factual finding that's required. You don't have to have any of the things that are normally the safeguards that you've pried in a warrant. That's why this whole Carpenter case matters and the Supreme Court's taking it up. But the other thing to note here is, this is going to be a different standard too. Because Leon and even Crowell involved a good faith standard where we're talking about the These orders aren't filled out by law enforcement officers. These orders are filled out by prosecutors and provided to judges. So now we're going to have to create, if we're going to do this, we have to create a reasonable prosecutor standard. And is the reasonable prosecutor standard going to be more exacting than the reasonable officer standard? I think it should be. And so then are we going to hold the prosecutor and say, hey, this obviously, if I'm using these warrantless attempts to get sell site data all the time, this creates a real risk that I'm violating the Fourth Amendment. If it's a reasonable prosecutor standard, maybe they can't pass that if they think about this too far. And do we really want to be drawing those lines? Well, now we get an officer and now we get a prosecutor. I don't think we do. The bottom line here is, if the exclusionary rule applies, this evidence is excluded and the cases remanded, we can go back. The prosecution is not lost at sea. This is not going to do some grand damage to them. Well, actually, this case in particular. But anyway, if you want to save, Judge Bowers, remind you, if you want to save a little time. Yes. I'll save the remainder of my time for a moment. All right. Thank you so much. Mr. Parente. May it please the court, my name is Chris Parente and I represent the United States. Judge, turning to the good faith argument, which we've just heard about, I think what's important to focus here on is defense counsel is saying, when you look at these records, it's 24 hour, seven surveillance of an individual. That's actually not true, first of all. Cell site records only give you information when the person is either making or receiving a call. And that's the distinction, one of the distinctions from Jones, where the tracker is actually giving you GPS location all the time. Cell phone records, all it is, they're the phone company's records, they're not created for the government, they're not created for law enforcement. They're just records that show what tower your cell phone is connecting to at a certain time. But the location services, I mean, this is a valid point. Know where your cell, your cell phone is kind of pinging them all the time. You could trace somebody's, it's not just when they're on the phone. For this, it is. For historical cell site records, what we're talking about going back in time, not GPS location, historical cell site records, all you can get from that is what tower that phone was using when they either made a call or received a call. Pinging is different, that's a separate standard. That's not what's at issue here. Here we're talking about historical cell site records. So could you review what you needed to show to Chief Judge Holderman and Chief Judge Castillo in order to get the orders here? Yes. You had to show that there are reasonable grounds to believe that the records sought are relevant and material to an ongoing criminal investigation. Right. So reasonable grounds to believe, which I guess Mr. Brindley's point is a lower standard than probable cause. It is a lower standard. But what's important here, especially with this case, Judge, defense concedes that we have probable cause at the time we applied for the phone records. So their best case scenario is, hey, you used the wrong procedure. They conceded in their motion to suppress the cell site evidence. It says, we acknowledge that the government had probable cause to believe that Mr. Curtis and Mr. Rogers committed all of these robberies and that they were using the cell phone numbers that for the records we obtained. And you agree with Mr. Brindley that the motion to suppress covered all of the SCA orders? It really didn't. The last robbery, the Woodridge robbery in December, we didn't get those records until after the motion was filed, until after actually Judge Kocouris denied the motion. But that one, it wasn't even a big deal because the defendant was caught near the Woodridge store. So the cell site wasn't even really an issue for that last robbery. He was caught there. But it picked up the earlier ones. It picked up the Holderman. It did. Really, it was just that one order. The one right after. So after the Deerfield robbery, these defendants are arrested, they say, hey, we did this with Mr. Curtis. Here's his phone number. We ordered the records. And lo and behold, you go back and on each of those days of the robberies, Mr. Curtis's phone is in the general area of those different locations. But in this reliance that Krull is somehow limited only to administrative statutes is not in Krull. Krull, the Supreme Court in Krull made clear that the good faith exception to the exclusionary rule applies where law enforcement reasonably relies on an enacted statute unless the statute is clearly unconstitutional. So that kind of addresses what defense counsel is saying about this parade of horribles. If some legislature went off the rails and passed some crazy statute that everyone would agree is clearly unconstitutional, there's an out in Krull. That's the out. But that's not the case here. No court has ever found that the Stored Communications Act is so clearly unconstitutional. In fact, every court to address this issue has found that it doesn't have a property interest. There is no Fourth Amendment violation. And the policy argument addressed in Krull makes sense here because it says an officer can't be expected to question the judgment of the legislature that passed the law. We are still following the SCA today. If I wanted a self-cite order today, I would go through the same procedures we used in this case. I would go to the chief judge in this district and I would say, this is how it's tied to a specific investigation, this is why we believe it's relevant and material, and the judge would make that decision. We don't get warrants because that's not the rule. And so to exclude this evidence two years ago by saying, hey, law enforcement, even though defense agrees you have probable cause, you didn't get a warrant, you used the statute that's still an act that's valid even today, it makes no sense and there would be no reason to deter police misconduct by suppressing that evidence here. That's why we don't even need to get to the merits or worry about what Carpenter says because the good faith exception here is enough to save the records that were used in this case. So it's your position that you actually can't go get a warrant? I don't see why you couldn't. We absolutely could. This is the procedure that Congress allows for and usually it's quite frankly quicker because you just have to meet with the chief judge at a certain time every day versus, you know, the magistrate judge is scheduled at a time, but it doesn't matter, you could. But for this purpose and for what he's arguing, it doesn't make sense when in his own motion to suppress the evidence, he concedes there was probable cause at the time we obtained the records. So best case scenario, all he's saying is you should have used a different procedure. I mean, we'll have Carpenter in three months, one assumes, unless they kick it over and I don't know why they would. Correct. But we believe whatever Carpenter, whichever way it comes out doesn't matter because this case can be decided on good faith or it could also be decided on harmless error. And for that argument, Judge, it's more than just, this case wasn't a cell site case. It was a telephone records case. Now there's no argument, it's important to realize there's no argument here that we shouldn't have been able to obtain the toll records in this case without a search warrant. Everyone agrees, toll records, just showing the calls back and forth, you don't need a search warrant for. That's the critical evidence here. So what you have, take the cell site out of this case, he's still convicted here. Doesn't matter. Because you have five independent cooperating witnesses who are caught committing these robberies who all identify the defendant, Mr. Curtis, as the robber. But I guess his big point is that the Joliet robbery is the one where he's acquitted on and that's the one where you don't have the cell records. Correct. But it's not, we didn't have the cell records. We had no phone records for Mr. Curtis for that robbery. So Mr. Curtis, after the three defendants get arrested on April 8th, he drops his phone and then that Joliet robbery doesn't happen for six months. So we never find a phone number for him. So all we have for Joliet, and this was the only robbery that this occurred for, was just the testimony of two cooperating witnesses. We had nothing else to corroborate it. Who had been highly impeached, you know, who had been. Absolutely. Mr. Burley did a fantastic job of impeaching them on their credibility. But what we had for every other robbery to kind of build back up their credibility was the toll records. And these robberies were- But they were just talking to each other as these things are underway. Not just talking, but before the robbery, they actually were in phone communication during the robbery. So you would have the video showing the cooperating witness on the surveillance video holding the people at gunpoint on a cell phone. Well, if you looked at the toll records, that person is talking to Mr. Curtis at that time. So that's just the toll records. Forget- cell site doesn't matter in that case. And we had that for all the other robberies besides Joliet. You can show telephone contact, which he's not challenging, before the robbery, during the robbery, and after the robbery. So that builds back up the credibility that they're making this up and just falsely implicating him. Of all the people that they could be talking to on the days that nobody disputes that they during and after. So that evidence was there. You also have the circumstances of his arrest at the end of this, in the exact manner that the cooperating witnesses all said these robberies always happen. Lookout car out front, phone contact, and then the robbery car second. In this case, in the last robbery, they finally catch the lookout car, which Mr. Curtis is in, and he's arrested. So if you look at that, you don't need cell site evidence in this case to convict the defendant. And he would have been convicted, regardless of the cell site evidence. If there's any other questions the court has. No. I mean, I don't have any. Thank you. All right. Thank you very much. Mr. Brindley. To begin with the harmlessness, Your Honor, I think the important factor here is this is a constitutional violation with a Chapman standard, and they must prove harmlessness beyond a reasonable doubt. And with respect to every robbery where cell site data analysis was used, it is the case that the defendant was convicted, and the one where they didn't have it, he was not. Now, there was other telephone evidence that was available, but the idea that they could prove beyond a reasonable doubt it was that and not the cell site analysis, it's impossible. What about the fact that the toll records are there? They're on the phone with each other. Is this just, you know, they're talking about, you know, the NCA? But that was part of, I mean, part of Mr. Curtis' testimony at the trial was an explanation of other people using that particular phone at different times. And so that by itself I don't think would be enough so we can prove harmlessness beyond a reasonable doubt. The corroboration of the cell site plus the phones plus the cooperating witnesses, that's when they got convictions. And I don't think we can get harmless beyond a reasonable doubt. Now, on the question of the what, when, when the information is transmitted, it's not just when they're talking on the phone, it's every email, every text message, every update, everything. And nobody thinks that their location is going to be plotted all those times, but it is. In Crowell, Crowell said the very reason that this is going to be okay and that we can still believe that we're going to have constitutional protection is because of pre-compliance review in this administrative statute, which is absent here. That was a justification they gave that's missing here, and that was a justification from Crowell itself. The other problem is counsel says, well, if it's a statute that really goes off the rails and just is outrageous, then you could still get review. But the problem that everybody should have with that is a statute doesn't have to be off the rails crazy in order to violate somebody's constitutional rights. And if good faith is applied in this instance, you'll have situations where statutes are violating constitutional rights, and there is no pragmatic or real way that a court is ever going to be able to get control, and the legislature is going to be deciding the scope of our Fourth Amendment protections. And what counsel said goes right to this point. Well, police officers, they're not supposed to question the legislature. Don't question the legislature. They must know what they're doing. So then the legislator is deciding, and the good faith exception is shielding them from the kind of judicial review that we ought to and need to have. So we ask you to reverse and remand. Thank you. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.